ROBERT ZELNICK (*Admitted Pro Hac Vice*)
rzelnick@mwe.com
McDERMOTT WILL & EMERY LLP
500 North Capitol Street, N.W.
Washington, D.C. 20001-1531
Telephone:  202-756-8000
Facsimile:  202-756-8087

NITIN GAMBHIR (SBN 259906)
ngambhir@mwe.com
McDERMOTT WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, CA  94025-4004
Telephone:  650 815 7400
Facsimile:  650 815 7401

Attorneys for Defendant
NORTH COAST BREWING CO., INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THELONIOUS SPHERE MONK, JR., as Administrator of and on behalf of the ESTATE OF THELONIOUS SPHERE MONK, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>NORTH COAST BREWING CO., INC., a California Corporation,<br><br>Defendant. | CASE NO.  4:17-cv-05015-HSG<br><br>**DEFENDANT NORTH COAST BREWING CO., INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:     February 8, 2018<br>Time:    2:00 p.m.<br>Ctrm:    2 – 4th Floor<br>Judge:   Hon. Haywood S. Gilliam, Jr. |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ........................................................................................................... 2

II.   STATEMENT OF UNDISPUTED FACTS ................................................................... 4

III.  LEGAL STANDARDS .................................................................................................... 7

IV.  ARGUMENT .................................................................................................................... 8

     A.   Plaintiff's Trademark Infringement Claim Should Be Dismissed ........................... 8

     B.   Plaintiff Has Not Stated A Claim Upon Which Relief Can Be Granted for Violation of New Jersey Common Law Right of Publicity .................................. 12

     C.   The Monk Estate's Unjust Enrichment Claim Also Fails To State A Claim Upon Which Relief Can Be Granted ...................................................................... 13

V.   CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................7, 11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................................7

*Bradley v. Chiron Corp.*,
    136 F.3d 1317 (Fed. Cir. 1998) .................................................................................................7

*Bridgestone Brands, LLC v. Dastgah*,
    No. 16-cv-00906-BLF (N.D. Cal., Mar. 18, 2016) ....................................................................8

*Brodsky v. Yahoo! Inc.*,
    630 F.Supp.2d 1104 (N.D. Cal. June 18, 2009) ......................................................................10

*Dep't of Parks & Recreation for State of California v. Bazaar Del Mundo Inc.*,
    448 F.3d 1118 (9th Circ. 2006) .................................................................................................8

*Douglas v. U.S. Dist. Ct. for the Cent. Dist. of California*,
    495 F.3d 1062, 1066 (9th Cir.2007) ........................................................................................11

*Gorski v. The Gymboree Corp.*,
    No. 14-cv-01314-LHK, 2014 WL 3533324 (N.D. Cal. July 16, 2014) ....................................5

*Green Valley Disposal Co. v. City of Monte Sereno*,
    No. C-94-20881-JW, 1995 WL 115425 (N.D. Cal. Mar. 13, 1995) ........................................10

*Hart v. Electronic Arts, Inc.*,
    717 F.3d 141 (3rd Cir. 2013) ...................................................................................................12

*Hebrew Univ. of Jerusalem v. General Motors*,
    903 F. Supp. 2d 932 (C.D. Cal. Oct. 15, 2012) .......................................................................12

*Herskowitz v. Apple Inc.*,
    940 F. Supp. 2d 1131 (N.D. Cal. Apr. 15, 2013) .....................................................................13

*James v. Delilah Films, Inc.*,
    544 N.Y.S.2d 447, 12 U.S.P.Q.2d 1387 (Sup. Ct. 1989) .........................................................10

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*,
    692 F.3d 983 (9th Cir. 2012) ...................................................................................................10

*Kaltwasser v. Cingular Wireless LLC*,
    No. C 07-00411, 2008 WL 3925445 (N.D. Cal. Aug. 22, 2008) ............................................11

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Low v. LinkedIn Corp.*,
    900 F.Supp.2d 1010 (N.D.Cal., July 12, 2012) .................................................................... 13

*Pardini v. Unilever US, Inc.*,
    961 F. Supp. 2d 1048 (N.D. Cal. July 9, 2013) .................................................................... 13

*Prone v. MacMillan, Inc.*,
    894 F.2d 579 (2d Cir. 1990) .................................................................................................. 10

*Sapiro v. Musicians' Union of San Francisco, Local No. 6*,
    No. C-87-850 AJZ, 1987 WL 58071 at *3 (N.D. Cal. Dec. 21, 1987) .................................. 11

*Savetsky v. Pre-Paid Legal Servs., Inc.*,
    No. 14-03514 SC, 2015 WL 4593744 (N.D. Cal. July 30, 2015) ......................................... 11

*Serafin v. Balco Properties Ltd., LLC*,
    235 Cal. App. 4th 165 (2015) ................................................................................................ 11

*Shaw v. Hahn*,
    56 F.3d 1128 (9th Cir. 1995) ................................................................................................... 7

*Shwarz v. United States*,
    234 F.3d 428 (9th Cir. 2000) ................................................................................................... 7

*In re Silicon Graphics, Inc. Sec. Litig.*,
    970 F. Supp. 746 (N.D. Cal. 1997) ......................................................................................... 7

*Wietschner v. Monterey Pasta Co.*,
    294 F. Supp. 2d 1102 (N.D. Cal. 2003) .................................................................................. 7

**Statutes**

Pa. Stat. Ann. Title 42, §8316(c) ................................................................................................ 12

15 U.S.C. §1057(f) ........................................................................................................................ 5

15 U.S.C. §1115(b) ............................................................................................................. *passim*

Lanham Act Section 15, 15 U.S.C. §1115 .................................................................................... 5

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 8, 2018 at 2:00 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Haywood S. Gilliam, Jr., 1301 Clay Street, Oakland, CA 94612, Courtroom 2, 4th Floor, Defendant North Coast Brewing Company, Inc. ("North Coast") will and do hereby move to dismiss the following claims in the First Amended Complaint of Plaintiff Thelonious Sphere Monk, Jr., as administrator of and on behalf of the Estate of Thelonious Sphere Monk, deceased (collectively, Monk Jr. and the Estate of Thelonious Sphere Monk are referred to herein as "The Monk Estate"):  (1) Claim 1 for trademark infringement (15 U.S.C. §1125(a)); (2) Claim 3 for violation of New Jersey common law right of publicity; and (3) Claim 4 for unjust enrichment.[1]  Dkt. 10.

The motion to dismiss is made pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that The Monk Estate's causes of action fail to state a claim upon which relief may be granted.  As discussed in the following Memorandum of Points and Authorities, The Monk Estate has not only failed to allege sufficient facts to support its claims for relief, but has made allegations that legally preclude the relief it seeks.  Therefore, The Monk Estate's claims should be dismissed.

This motion is based upon this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Declaration of Nitin Gambhir ("Gambhir Decl.") all the papers and pleadings on file in this action, all matters of which the Court may take judicial notice, and such other pleadings, evidence or argument as may be considered by the Court.  A proposed order is included with this motion.

//
//
//
//

---

[1] The Monk Estate voluntarily dismissed its Second Claim for Relief for Violation of California Civil Code §3344.1 (California's statutory right of publicity).  *See* Dkt. 17.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

## I. INTRODUCTION

Defendant North Coast Brewing Company, Inc. ("North Coast") is a small craft beer brewery located in Fort Brag, California. For decades, North Coast and its owners have been substantial patrons of the arts, with a particular lifetime passion for jazz music. Jazz musician Thelonious Sphere Monk ("Mr. Monk Sr.") died in 1982.

In 2005, North Coast developed a new craft beer, which it decided to name BROTHER THELONIOUS BELGIAN STYLE ABBEY ALE ("BROTHER THELONIOUS"). North Coast's idea was to donate a significant portion of the proceeds from the brand to the non-profit Thelonious Monk Institute of Jazz ("Monk Institute"). At that time, North Coast discussed that idea with The Monk Estate. The Monk Estate (for which Plaintiff Monk Jr. was the appointed Representative) and The Monk Institute (of which Plaintiff Monk Jr. was the then-Chairman of the Board of Trustees) were delighted with the idea. Indeed, the First Amended Complaint alleges that The Monk Estate agreed by oral contract that it would not object to North Coast's brand in exchange for North Coast's proposed donations to the Monk Institute.

Thus, in 2006 North Coast applied for, and in 2007 was granted, a federal trademark registration for its BROTHER THELONIOUS brand. Pursuant to 15 U.S.C. §1115(b), that registration became "incontestable" in 2013, at which point federal law declared it to be "*conclusive* evidence of the validity of the registered mark and of the registration of the mark, of the registrant's [i.e., North Coast's] ownership of the mark, and of the registrant's [i.e., North Coast's] exclusive right to use the registered mark in commerce…" (emphasis added). Accordingly, over more than a decade, North Coast has invested substantial sums to build its BROTHER THELONIOUS brand. As North Coast's sales of BROTHER THELONIOUS have increased, so have its donations to the Monk Institute.

The Monk Estate had repeatedly and frequently lauded, encouraged and celebrated North Coast's BROTHER THELONIOUS brand, as well as North Coast's donations of a substantial portion of proceeds from that brand to the Monk Institute. Consistent with North Coast's longstanding registrations for the BROTHER THELONIOUS brand, at no time from 2005 until at least 2015 did The Monk Estate claim that The Monk Estate was the owner of the brand, or that

1   North Coast was a mere "licensee" of the BROTHER THELONIOUS brand, or that North Coast
2   was not the owner of that brand.

3   In 2015, Monk Jr. had a disagreement with the Monk Institute and was removed as
4   Chairman of the Board of Trustees.  Subsequently, the then-counsel for The Monk Estate
5   acknowledged that North Coast owned the BROTHER THELONIOUS brand, but inquired
6   whether North Coast would be willing to enter a different arrangement in relation to BROTHER
7   THELONIOUS.  In that regard, The Monk Estate's counsel in 2015 made the following
8   admissions in writing:

- "Since 2006 NORTH COAST BREWERY has established *its brand* 'BROTHER THELONIOUS'" (emphasis added);
- "The Monk Estate has *refrained from demanding any license for the first ten years* of marketing BROTHER THELONIOUS" (emphasis added);
- "Our *proposal* is to *introduce* a license for the MONK ESTATE" and (emphasis added).

14  North Coast resisted The Monk Estate's effort to enter a new and different contract than
15  what The Monk Estate now alleges existed since 2005.  Thereafter, a new counsel for The Monk
16  Estate took a different track, and advised North Coast that The Monk Estate has unilaterally
17  "decided" that North Coast's "permission" to use the Monk name, image and likeness were
18  unilaterally "revoked."  The Monk Estate also suddenly demanded that North Coast's donations
19  to the Monk Institute be sent instead to Monk Jr..  When North Coast declined that unilateral
20  "determination" in relation to the brand it had built over the past decade, The Monk Estate filed
21  the instant litigation via yet another new set of counsel.  The Monk Estate's unilateral efforts to
22  secure a personal income stream from North Coast's decade-long charitable largesse to the non-
23  profit Monk Institute are, quite frankly, reprehensible.

24  Count 1 of the First Amended Complaint (trademark infringement) should be dismissed
25  for three independent reasons: (1) North Coast's "Incontestable" registration of the BROTHER
26  THELONIOUS brand is "conclusive evidence of [North Coast's] ownership of the mark," and
27  North Coast cannot be an infringer of a brand it owns; (2) The Monk Estate has never claimed,
28  nor can it truthfully claim, that it owns the BROTHER THELONIOUS brand, and, indeed, The

- 3 -

MOTION TO DISMISS FIRST
AMENDED COMPLAINT
CASE NO. 4:17-CV-05015-HSG

1  Monk Estate has not alleged that it ever used the BROTHER THELONIOUS brand on beer or
2  collateral goods used to market beer; and (3) The First Amended Complaint alleges that The
3  Monk Estate is contractually bound not to object to North Coast's use of the name, image and
4  likeness of Mr. Monk, Sr., which The Monk Estate alleges are contained in North Coast's
5  registered label design.

6  Count 3 of the First Amended Complaint (New Jersey Common Law Right of Publicity)
7  should be dismissed because, again, (1) The First Amended Complaint alleges that The Monk
8  Estate is contractually bound not to object to North Coast's use of the name, image and likeness
9  of Mr. Monk, Sr.; and (2) North Coast's "Incontestable" registration of the THELONIOUS
10 MONK brand is "conclusive evidence of [North Coast's] exclusive right to use the mark in
11 commerce."

12 Count 4 of the First Amended Complaint (Unjust Enrichment) should be dismissed
13 because (1) the only two predicates for the claim of unjust enrichment (i.e., trademark
14 infringement in count 1 and violation of the right of publicity in count 3) fail for the reasons
15 discussed herein; and (2) California does not recognize unjust enrichment as a separate cause of
16 action under these circumstances.

17 Accordingly, the pleadings, exhibits thereto and evidence for which the Court may take
18 judicial notice establish that The Monk Estate's First Amended Complaint fails to state a claim
19 for which relief can be granted and should be dismissed with prejudice.

20 **II.   STATEMENT OF UNDISPUTED FACTS**

21 In 2005 – *more than 10 years before this complaint was filed* – North Coast decided to
22 introduce BROTHER THELONIOUS BELGIAN STYLE ABBEY ALE, in part to provide a
23 source of funding to the Monk Institute." *See* Dkt. 10 at ¶¶29-30 (admitting that this beer has
24 been sold for "many years"); *see also* North Coast's Incontestable U.S. Trademark Registration
25 //
26 //
27 //
28 //

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

No. 3,285,256. [2]  The Monk Estate agreed with North Coast's plan to introduce the beer and to make a financial contribution to the Monk Institute, and The Monk Estate alleges that the parties have long had a contract by which The Monk Estate agreed not to object to North Coast's use of BROTHER THELONIOUS:

> T.S. Monk [i.e., Monk Jr.] verbally agreed to permit North Coast to utilize the THELONIOUS MONK name, image and likeness for…marketing and distributing BROTHER THELONIOUS BELGIAN STYLE ABBEY ALE *in exchange for* North Coast's agreement to donate a portion of the profits from the sale of BROTHER THELONIOUS BELGIAN STYLE ABBEY ALE to the Thelonious Monk Institute of Jazz.

Dkt. 10 at ¶37 (emphasis added).  The Monk Estate does not allege that the foregoing oral contract included any agreed additional terms.  After North Coast developed the label that is depicted at paragraph 30 of the First Amended Complaint, on November 30, 2006, North Coast filed U.S. Trademark Application Serial No. 77/054,217 to register the design depicted on that label.  *See* Gambhir Decl., Ex. A.  On August 28, 2007, after due examination of the application, the U.S. Patent and Trademark Office ("PTO") allowed the application to become U.S. Registration No. 3,285,256, for the design depicted below:



*See id.*

---

[2] A certified status and title copy of Incontestable U.S. Trademark Registration No. 3,285,256 is attached at Ex. A hereto to the Declaration of Nitin Gambhir ("Gambhir Decl.").  North Coast asks the Court to take judicial notice of Ex. A.  *See* 15 U.S.C. §1057(f); *see also Gorski v. The Gymboree Corp.*, No. 14-cv-01314-LHK, 2014 WL 3533324, fn. 1 (N.D. Cal. July 16, 2014) (Koh, J.) (granting request for judicial notice of the file history of U.S. Trademark Registration because "documents of the Patent and Trademark Office are 'public records subject to judicial notice on a motion to dismiss.'")  The reference to "Section 15" on the attached registration certificate is evidence that the registration has achieved Incontestable status under Lanham Act Section 15, 15 U.S.C. §1115.

1    On September 13, 2013, after many years of North Coast's use and maintenance of the
2 registration for the BROTHER THELONIOUS brand, the PTO declared North Coast's trademark
3 registration "Incontestable," which ***conclusively*** settled title to the BROTHER THELONIOUS
4 brand. *See id*. By federal statute, North Coast's Incontestable registration serves as "***conclusive***
5 evidence of the validity of the registered mark and of the registration of the mark, of the
6 registrant's ownership of the mark, and of the registrant's exclusive right to use the registered
7 mark in commerce. . . ." *See* 15 U.S.C. §1115(b) (emphasis added). In addition to the registered
8 label design depicted above, North Coast also owns a federal registration to the word mark
9 BROTHER THELONIOUS. *See* Gambhir Decl., Ex. B.

While North Coast does not believe that it needs "permission" from The Monk Estate to market and distribute a brand that North Coast established and ***conclusively*** owns, The Monk Estate has not alleged that North Coast failed to hold up its end of this alleged bargain – i.e., that North Coast failed to make contributions to the Monk Institute. *See* Dkt. 1 (Complaint), *passim*, and Exh. 2 to Dkt. 10 (First Amended Complaint)). Instead, The Monk Estate's allegation at paragraph 39 of the First Amended Complaint reflects The Monk Estate's unilateral breach of a contract that had been in place for more than 10 years:

> On January 11, 2016, Monk notified North Coast that any consent previously given to North Coast by T.S. Monk or the Monk Estate for North Coast to use the THELONIOUS MONK name, image or likeness … was immediately revoked, and that North Coast could no longer use the THELONIOUS MONK name, image and likeness without entering into a merchandising agreement with the Estate of Thelonious Monk, and advised that all royalty payments must be made to The Monk Estate.

Dkt. 10 at ¶39 and Dkt. 10-2 (Exh. 2 to First Amended Complaint). Again, neither the First Amended Complaint nor The Monk Estate's unilateral notice of termination of the contract alleges that North Coast failed to make payments to the Monk Institute at any time – because The Monk Estate cannot truthfully make such an allegation. *See generally* Dkt. 10, and Dkt. 10-2 (Exh. 2 to First Amended Complaint).

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

### III. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "[T]hreadbare recitals of a cause of action's element, supported by mere conclusory statements," however, are not sufficient either. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Likewise, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998). Moreover, a court is also "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Claims with factual allegations that do not "raise a right to relief above the speculative level" should be dismissed under Rule 12(b)(6). *Twombly*, 550 U.S. at 555.

Although for purposes of ruling on a Rule 12(b)(6) motion the court accepts factual allegations in the complaint as true, the court "need not accept as true allegations contradicted by judicially noticeable facts" and it "may look beyond the plaintiff's complaint to matters of public record" without converting the motion into a summary judgment motion. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000); *Shaw v. Hahn,* 56 F.3d 1128, 1129 n.1 (9th Cir. 1995); *see also Wietschner v. Monterey Pasta Co.,* 294 F. Supp. 2d 1102, 1109 (N.D. Cal. 2003) ("On a Motion to Dismiss, documents crucial to the plaintiff's claims but not explicitly incorporated in a complaint can be noticed in order to prevent a plaintiff from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based."); *In re Silicon Graphics, Inc. Sec. Litig.*, 970 F. Supp. 746, 759 (N.D. Cal. 1997) ("Plaintiffs cannot preclude consideration of defendants' SEC forms [on which their allegations are based] by artful pleading.").

## IV. ARGUMENT

### A. Plaintiff's Trademark Infringement Claim Should Be Dismissed

The Monk Estate has claimed that North Coast's marketing under the BROTHER THELONIOUS brand infringes The Monk Estate's trademark rights. Dkt. 10 at ¶30 (Count 1). The Monk Estate's claim of trademark infringement is foreclosed by law and by the other allegations made in the First Amended Complaint, and therefore The Monk Estate has not pleaded a claim upon which relief can be granted.

First, by law (and logic), North Coast cannot be an infringer of a trademark that federal law says North Coast *conclusively* owns and has the *exclusive* right to use. 15 U.S.C. §1115(b) ("the registration shall be conclusive evidence of … the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce."); *Bridgestone Brands, LLC v. Dastgah*, No. 16-cv-00906-BLF (N.D. Cal., Mar. 18, 2016) ("federal trademark registrations for the marks at issue are "conclusive evidence of the validity," ownership, and "exclusive rights to use the registered mark[s] in commerce").

Second, The Monk Estate's claim of trademark infringement fails because The Monk Estate has not alleged any facts to support a claim that it is the owner of the BROTHER THELONIOUS brand. A plaintiff in a trademark infringement case must allege that it has continuously used the mark in commerce, from a time prior to defendant, to distinguish its goods or services from the goods or services of others. *See, e.g.*, *Dep't of Parks & Recreation for State of California v. Bazaar Del Mundo Inc.,* 448 F.3d 1118, 1125, 1127 (9th Circ. 2006) ("To acquire ownership of a trademark …, the party claiming ownership must have been the first to actually use the mark in the sale of goods or services" and "to establish continuous use of the mark[s] in commerce."). The Monk Estate has not alleged that prior to North Coast's federal trademark registration granted in 2007 – or ever – it has used the BROTHER THELONIOUS brand in commerce, whether to distinguish beer and collateral items offered for the purpose of marketing beer, or for anything else. Moreover, The Monk Estate *cannot* claim to be the owner of the BROTHER THELONIOUS brand because North Coast's incontestable trademark

1  registration for the below brand establishes that North Coast is the "*conclusive*" owner of this
2  brand:



8  *See* 15 U.S.C. §1115(b); (emphasis added); *see also* Gambhir Decl., Exs. A and B.

9      Third, The Monk Estate has also alleged the existence of a contract by which The Monk
10 Estate agreed not to object to North Coast's use of the "THELONIOUS MONK name, image and
11 likeness." Specifically, The Monk Estate alleges that "T.S. Monk verbally agreed to permit North
12 Coast to utilize the THELONIOUS MONK name, image and likeness … *in exchange for* North
13 Coast's agreement to donate a portion of the profits from the sale of BROTHER THELONIOUS
14 BELGIAN STYLE ABBEY ALE to the Thelonious Monk Institute of Jazz." Dkt. 10 at ¶37
15 (emphasis added).  In other words, The Monk Estate has conceded that it would not object to
16 North Coast's use of the "THELONIOUS MONK name, image and likeness" in connection with
17 beer and the "marketing" of beer, and so The Monk Estate is foreclosed from claiming that such
18 use was "unauthorized."

19     Importantly, The Monk Estate's First Amended Complaint did not allege – and cannot
20 truthfully allege – any facts to the effect that North Coast failed to "donate a portion of the
21 profits … to the Thelonious Monk Institute of Jazz" as the alleged contract required. *See* Dkt. 10
22 / /
23 / /
24 / /
25 / /
26 / /
27 / /
28 / /

1  at ¶37. [3] Thus, The Monk Estate's First Amended Complaint in this regard should be dismissed.

2  *See e.g.*, *Green Valley Disposal Co. v. City of Monte Sereno*, No. C-94-20881-JW, 1995 WL

3  115425, at *3 (N.D. Cal. Mar. 13, 1995) (dismissing cause of action because "[P]laintiff has not

4  alleged any facts to demonstrate that City has breached the franchise agreement.")

5  Despite no allegation of a breach of the alleged contract by North Coast, The Monk Estate

6  made the unilateral decision that payments now must be made to The Monk Estate instead of

7  making donations to the non-profit Monk Institute. Dkt. 10 at ¶39, and Dkt. 10-2 (Exh. 2 to First

8  Amended Complaint). But as the First Amended Complaint made clear, paying The Monk Estate

9  instead of donating to the Monk Institute was *not* the agreement that The Monk Estate alleges

10  was struck between the parties. *Compare id.* at ¶37 with ¶39. Moreover, the First Amended

11  Complaint does not allege – and cannot truthfully allege – that the parties to the alleged contract

12  agreed that The Monk Estate could terminate or change the contract at will. California law is

13  clear that one party to a contract cannot unilaterally change its terms – much less threaten

14  "termination" of the alleged contract and file a federal lawsuit if North Coast refused the new

---

[3] While not directly pertinent to the instant Motion to Dismiss, the history of the materially changing factual allegations underlying Count 3 reflects a careless disregard for the truth, such that further amendment of the already-amended Complaint would be inappropriate. *See e.g., Brodsky v. Yahoo! Inc.*, 630 F.Supp.2d 1104, 1111 (N.D. Cal. June 18, 2009 (courts may deny leave to amend "due to 'undue delay, bad faith…repeated failure to cure deficiencies by amendments previously allowed, undue prejudice…[and] futility of amendment.") For example, the initial Complaint in this action alleged that Mr. Monk Sr. lived in New York at the time of his death. *See* Dkt. 1 at ¶ 8. North Coast's counsel then informed counsel for The Monk Estate that, like most U.S. states, New York does not recognize a post-mortem right of publicity, and that The Monk Estate therefore owned no recognized right of publicity anywhere in the U.S. *See Prone v. MacMillan, Inc.,* 894 F.2d 579, 585 (2d Cir. 1990) (stating that New York State courts have yet to recognize a non-statutory right of publicity that survived death); *see also, James v. Delilah Films, Inc.*, 544 N.Y.S.2d 447, 451, 12 U.S.P.Q.2d 1387, 1389 (Sup. Ct. 1989 (no postmortem right of publicity in New York); *see also Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983 (9th Cir. 2012) (Applying the so-called "Marilyn Monroe Rule," which looks to the state of domicile of a decedent on the question of whether a posthumous right of publicity may exist). The Monk Estate then quickly filed a First Amended Complaint, which alleged instead that Mr. Monk Sr. was domiciled in New Jersey at the time of his death and that he had lived in New Jersey for at least 10 years prior to his death. *See* Dkt. 10 at ¶8. For purposes of this Motion to Dismiss, North Coast does not challenge the allegation in the First Amended Complaint that Mr. Monk Sr. was domiciled in New Jersey at the time of his death, but this glaring material amendment suggests that The Monk Estate is inclined to say anything necessary to avoid dismissal of its case.

terms. *See e.g., Savetsky v. Pre-Paid Legal Servs., Inc.,* No. 14-03514 SC, 2015 WL 4593744, at *5 (N.D. Cal. July 30, 2015) (recognizing that California law does not permit unilateral contract modifications); *Kaltwasser v. Cingular Wireless LLC,* No. C 07-00411, 2008 WL 3925445, at *2 (N.D. Cal. Aug. 22, 2008) ("[T]he Ninth Circuit recently has held that "a party can't unilaterally change the terms of a contract; it must obtain the other party's consent before doing so. This is because a revised contract is merely an offer and does not bind the parties until it is accepted.") (citing *Douglas v. U.S. Dist. Ct. for the Cent. Dist. of California,* 495 F.3d 1062, 1066 (9th Cir.2007)); *Sapiro v. Musicians' Union of San Francisco, Local No. 6*, No. C-87-850 AJZ, 1987 WL 58071, at *3 (N.D. Cal. Dec. 21, 1987) ("If a contract between two private parties allowed for unilateral change by one, it would be unconscionable."); *Serafin v. Balco Properties Ltd., LLC,* 235 Cal. App. 4th 165, 176 (2015) (stating that "California law prevents a party from exercising a discretionary power, such as the power to modify, in bad faith or in a way that deprives the other party of the benefits of the agreement"). Indeed, North Coast's donation of portions of its proceeds to a non-profit organization is materially different from payments to a private estate instead.

Moreover, it belies common sense that any company, such as North Coast, would have spent over a decade to invest in and build a brand if it knew could – pursuant to some alleged contract – be terminated at will, or be used to hold North Coast hostage. Such a scenario is simply implausible, and The Monk Estate has alleged no facts showing otherwise. *See e.g., Iqbal*, 556 U.S. at 663-64 ("Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.")

The Monk Estate's claim of trademark infringement is premised on North Coast's alleged unauthorized use the name, image or likeness of Mr. Monk Sr. in connection with beer and the marketing and distribution of beer. Not only does the First Amended Complaint fail to proffer any factual allegations supporting a plausible scenario that North Coast's use was unauthorized, the First Amended Complaint actually alleges that The Monk Estate agreed by contract not to

1  object to such use. Accordingly, The Monk Estate's First Claim of Relief for trademark
2  infringement should be dismissed.

### B. Plaintiff Has Not Stated A Claim Upon Which Relief Can Be Granted for Violation of New Jersey Common Law Right of Publicity

Unlike California, there is no statutory right of publicity under New Jersey law; rather, New Jersey's right of publicity is rooted in common law. *Hart v. Electronic Arts, Inc.,* 717 F.3d 141, 151 (3rd Cir. 2013). [4] As discussed below, The Monk Estate has failed to allege sufficient facts to support a claim that North Coast's use of the "THELONIOUS MONK name, image and likeness" was unauthorized.

To the contrary, The Monk Estate's claim for violation of New Jersey's common law right of publicity is foreclosed by The Monk Estate's allegation that a contract was entered into between North Coast and The Monk Estate, under which The Monk Estate alleges it expressly agreed not to object to North Coast's use of the "THELONIOUS MONK name, image, and likeness." As discussed above in Section IV.A, *supra*, the First Amended Complaint proffers no facts to support a claim that North Coast has failed to make donations to the Monk Institute in connection with such sales and marketing. Thus, North Coast's use of the "THELONIOUS MONK name, image, and likeness" for purposes of "marketing and distributing" BROTHER THELONIOUS beer cannot violate The Monk Estate's alleged rights. *See* Dkt. 10 at ¶37.

In addition, Count 3 of the First Amended Complaint should be dismissed because the claim is foreclosed by North Coast's ownership of an Incontestable federal trademark registration (*see* Gambhir Decl., Exh. A), which confers on North Coast "the exclusive right to use the mark

---

[4] Neither the New Jersey courts nor the New Jersey legislature has ever decided the term for any post-mortem right of publicity. *See e.g., Hebrew Univ. of Jerusalem v. General Motors*, 903 F. Supp. 2d 932, 936 (C.D. Cal. Oct. 15, 2012) (discussing status of New Jersey law and noting that no New Jersey court or the New Jersey legislature has decided duration of its common law post-mortem right of publicity). As mentioned in footnote 3, the neighboring state of New York – as is true for most U.S. states – recognizes no post-mortem right of publicity, and neighboring state Pennsylvania recognizes a statutory 30-year post-mortem right. *See* Pa. Stat. Ann. Title 42, §8316(c). Mr. Monk Sr. died in 1982. Dkt. 10 at ¶8. The Monk Estate did not even try to record Mr. Monk Sr.'s alleged right of publicity until more than 30 years after his death. *See* Dkt. 10 at ¶23. Thus, there is a very serious question whether New Jersey would even recognize a post-mortem right of publicity in relation to Mr. Monk Sr. more than 30 years after his death.

1  in commerce." *See* 15 U.S.C. §1115(b). Notably, The Monk Estate's claim for violation of
2  Mr. Monk Sr.'s "name, image and likeness" is for the name, image and likeness identified at
3  paragraph 30 of the First Amended Complaint, which in turn is the same label covered by North
4  Coast's Incontestable trademark registration. *Compare* Dkt. 10 at ¶30 to Gambhir Decl., Ex. A.
5  Accordingly, The Monk Estate's claim that North Coast violated its right of publicity
6  under New Jersey common law must fail because it fails to state a claim upon which relief can be
7  granted.

### C. The Monk Estate's Unjust Enrichment Claim Also Fails To State A Claim Upon Which Relief Can Be Granted

The Monk Estate's Fourth Claim for Relief is a standalone cause of action for unjust enrichment. In support of this claim, The Monk Estate alleges that "North Coast was and continues to be unjustly enriched through unlicensed and unauthorized exploitation of the name, image and likeness of THELONIOUS MONK" and that The Monk Estate is "entitled to just compensation under the common law of the State of California." Dkt. 10 at ¶¶84-85. However, California does not recognize unjust enrichment as a separate cause of action. *Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1030-31 (N.D.Cal., July 12, 2012) (Koh, J.) ("California does not recognize a stand-alone cause of action for unjust enrichment: '[u]njust enrichment is not a cause of action, just a restitution claim.'") And courts in this district have found that "a plaintiff cannot assert a claim for unjust enrichment that is merely duplicative of statutory or tort claims." *Pardini v. Unilever US, Inc.*, 961 F. Supp. 2d 1048, 1060 (N.D. Cal. July 9, 2013) (Conti, J.) (dismissing unjust enrichment claim with prejudice for want of a actionable misconduct after finding plaintiff's predicate claims fail as pled); *see also, Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1148 (N.D. Cal. Apr. 15, 2013 (Koh, J.) (granting motion to dismiss unjust enrichment claim with prejudice because "California does not recognize 'unjust enrichment' as a separate cause of action.").

Here, The Monk Estate's unjust enrichment claim should also be dismissed because it relies on the same insufficient factual allegations in Counts 1 and 3 as a predicate for the unjust enrichment claim, namely, North Coast's alleged "unlicensed and unauthorized exploitation of

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

the name, image, and likeness of THELONIOUS MONK." Dkt. 10 at ¶84. Indeed, The Monk Estate's unjust enrichment claim is a vague claim for relief that does no more than incorporate by reference the alleged wrongdoing already addressed by its First and Third Claims for Relief, and thus should not only be dismissed as duplicative but also as implausible, given the above-noted critical deficiencies in The Monk Estate's allegations. Accordingly, The Monk Estate's Fourth Claim for Relief should be dismissed with prejudice.

## V.   CONCLUSION

For the foregoing reasons, North Coast respectfully requests that The Monk Estate's claims for trademark infringement (Count 1), for violation of New Jersey's common law right of publicity (Count 3), and for unjust enrichment (Count 4) be dismissed with prejudice.

Dated: November 13, 2017

Respectfully submitted,

McDERMOTT WILL & EMERY LLP

By: */s/ Nitin Gambhir*
   Nitin Gambhir

Attorneys for Defendant
NORTH COAST BREWING CO., INC.

- 14 -

MOTION TO DISMISS FIRST
AMENDED COMPLAINT
CASE NO. 4:17-CV-05015-HSG