UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THELONIOUS MONK, JR., <br><br>Plaintiff, <br><br>v. <br><br>NORTH COAST BREWING CO. INC., <br><br>Defendant. | Case No.17-cv-05015-HSG <br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** <br><br>Re: Dkt. No. 22 |

Pending before the Court is Defendant North Coast Brewing Company's motion to dismiss the First Amended Complaint. Dkt. No. 10 ("FAC"). For the reasons set forth below, Defendant's motion is **DENIED**.[1]

I.  **BACKGROUND**

   A.  **Factual Allegations**

Plaintiff is Thelonious Sphere Monk, Jr., bringing this action on behalf of the estate of his father, Thelonious Sphere Monk. FAC ¶ 7. Thelonious Monk was a "pioneer of the Bebop style of jazz music" who "became one of the most famous jazz musicians of all time." *Id.* ¶ 12. As an artist, he "cultivated a unique look," "adopt[ing] a distinctive style in suits, hats, facial hair and sunglasses." *See id.* ¶ 13. Among his numerous accolades are his claim to having composed "Round Midnight," "the most recorded jazz composition of all time," *id.* ¶ 14, and holding the title of "second most recorded composer of jazz music of all time, behind only Duke Ellington," *id.* ¶ 15. Monk died in New Jersey on February 17, 1982, after which Monk, Jr. was appointed the administrator of his estate. *See id.* ¶¶ 8-9.

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

Defendant is a craft brewery that "[f]or many years . . . has produced, distributed, and sold an ale brewed in the Trappist style called" Brother Thelonious Belgian Style Abbey Ale ("Brother Thelonious"). *See id.* ¶¶ 26, 28-29. The ale's label and packaging "prominently feature[] the name, image and likeness of Thelonious Monk." *See id.* ¶¶ 30-32. Specifically, Monk is shown "holding a goblet," "wearing his signature sunglasses, hat and facial hair" with "a halo of piano keys surround[ing] Monk's head in a manner evocative of saintly characters featured in medieval religious paintings." *Id.* ¶ 31. Defendant also "features the Monk name, image and likeness in all of its advertising, marketing and sales materials" for Brother Thelonious. *Id.* ¶ 33. Additionally, Defendant uses the Monk name, image, and likeness to sell Brother Thelonious and other products on its website, *see id.* ¶ 34, as well as "in connection with promotional events at [j]azz festivals and other locations," *id.* ¶ 35.

Plaintiff alleges that it "verbally agreed" prior to this dispute to allow Defendant to use Monk's name, image, and likeness "for the limited purposes of solely marketing and distributing [Brother Thelonious] in exchange for [Defendant's] agreement to donate a portion of the profits from the sale of [Brother Thelonious] to the Thelonious Monk Institute of Jazz." *Id.* ¶ 37. Plaintiff also states that Defendant has never had authorization to use Monk's name, image, or likeness "for the sale of merchandise." *Id.* ¶ 38. In any event, on January 11, 2016, Plaintiff informed Defendant that "any consent previously given" to Defendant to use Monk's name, image, or likeness in the sale of Brother Thelonious "was immediately terminated and revoked, and that [Defendant] could no longer use the [Monk] name, image, and likeness without entering into a merchandising agreement with" his estate. *Id.* ¶ 39. In the interim, Plaintiff "advised . . . that all royalty payments must be made to The Monk Estate." *Id.* Since then, Defendant has continued to use the Monk name, image, and likeness "without permission of the Monk Estate and without compensating the Monk Estate." *Id.* ¶ 40.

B.     **Procedural Posture**

Plaintiff filed the FAC on September 12, 2017. Dkt. No. 10. Defendant filed this motion on November 13, 2017. Dkt. No. 22 ("Mot."). Plaintiff filed its opposition on December 8, 2017, Dkt. No. 33 ("Opp."), and Defendant replied on December 20, 2017, Dkt. No. 35 ("Reply").

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## III. DISCUSSION

Plaintiff alleges three causes of action: (1) trademark infringement under 15 U.S.C. § 1125(a); (2) a violation of New Jersey's common law right of publicity; and (3) unjust enrichment.[2] Defendant moves to dismiss the entire FAC. *See* Mot. at 4. The Court considers each argument in turn.

### A. Plaintiff States a Claim for Trademark Infringement on a Theory of False Endorsement.

The parties disagree as to how to properly characterize Plaintiff's federal infringement claim. Defendant contends that Plaintiff's claim is that Defendant's "marketing under the [Brother

---

[2] Plaintiff originally brought an additional claim for relief under California Civil Code § 3344.1, *see* FAC ¶¶ 56-67, but later voluntarily dismissed that claim, *see* Dkt. No. 17.

3

1 Thelonious] brand infringes The Monk Estate's trademark rights" in the Brother Thelonious
2 brand. *See* Mot. at 8. Plaintiff, on the other hand, characterizes its trademark infringement claim
3 as "one of false endorsement." Opp. at 3. While the FAC does not use the term "false
4 endorsement," it does make clear that Plaintiff is seeking relief for Defendant's alleged
5 infringement of the Monk name, image, and likeness—not for some asserted interest in the
6 Brother Thelonious brand itself. *See* FAC ¶¶ 48-53. Moreover, Plaintiff plainly alleges that
7 Defendant's use of the Monk name, image, and likeness "is likely to cause confusion, mistake, or
8 deceive as to whether [Monk] or the Monk Estate is connected with, affiliated with, sponsors or
9 approves" Brother Thelonious, "and other products that feature [his] name, image and likeness."
10 *See* FAC ¶ 51. Accordingly, the Court will treat Plaintiff's trademark infringement claim as one
11 of false endorsement, notwithstanding the parties' failure to engage with the relevant doctrine.

> The false endorsement provision of the Lanham Act provides that
>> Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

18 15 U.S.C. § 1125(a)(1)(A). Courts recognize false endorsement claims "brought by plaintiffs,
19 including celebrities, for the unauthorized imitation of their distinctive attributes, where those
20 attributes amount to an unregistered commercial 'trademark.'" *Waits v. Frito-Lay, Inc.*, 978 F.2d
21 1093, 1106 (9th Cir. 1992), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control*
22 *Components, Inc.*, 134 S. Ct. 1377 (2014). To establish a claim for false endorsement, a plaintiff
23 must show that it (1) "[has] a protectable interest in the marks or trade dress at issue," and (2) that
24 [the defendant's] use of the marks or trade dress has created a likelihood of consumer confusion."
25 *LifeScan, Inc. v. Shasta Techs., LLC*, No. 12-cv-06360-JST, 2013 WL 12201564, at *4 (N.D. Cal.
26 May 21, 2013). "[L]ikelihood of consumer confusion is the determinative issue," *Cairns v.*
27 *Franklin Mint Co.*, 292 F.3d 1139, 1149 (9th Cir. 2002), and the inquiry is "predominantly factual
28 in nature," *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1008 (9th Cir. 2001) (quoting *Wendt*

*v. Host Int'l*, 125 F.3d 806, 812 (9th Cir. 1997)).

In cases involving a celebrity, this Circuit has used an eight-factor test to determine whether there is a likelihood of confusion:

1. the level of recognition that the plaintiff has among the segment of society for whom the defendant's product is intended;
2. the relatedness of the fame or success of the plaintiff to the defendant's product;
3. the similarity of the likeness used by the defendant to the actual plaintiff;
4. evidence of actual confusion;
5. marketing channels used;
6. likely degree of purchaser care;
7. defendant's intent on selecting the plaintiff; and
8. likelihood of expansion of the product lines.

*Downing*, 265 F.3d at 1007-08. "Although all of these factors are appropriate for consideration in determining the likelihood of confusion, they are not necessarily of equal importance, nor do they necessarily apply to every case." *Id.* at 1008.

Plaintiff has pled sufficient facts to state a claim of false endorsement. Certainly it is plausible that Plaintiff—the Monk estate—has a protectable interest in the name, image, and likeness of Monk. *See Kournikova v. Gen. Media Commc'ns*, 278 F. Supp. 2d 1111, 1120 (C.D. Cal. 2003) (finding that famous tennis player "clearly has an interest in promoting and maintaining her own mark—that is an interest in the exploitation of her name and likeness"). Moreover, the alleged facts are sufficient to support a possible finding of likelihood of confusion. *See* FAC ¶¶ 30 (alleging that Defendant has "consistently" sold an ale "that prominently features the name, image and likeness of Thelonious Monk"), 31 (alleging that ale's packaging "features the name, image[] and likeness of Thelonious Monk"), 32 (alleging that "'BROTHER THELONIOUS' is the principal feature in large print in all the product packaging"). This is particularly true at the pleading stage, given the fact-intensive nature of the likelihood of confusion inquiry. *See Downing*, 265 F.3d at 1008.[3]

---

[3] A sampling of Ninth Circuit authority dealing with the likelihood of confusion analysis demonstrates that it generally takes place after the parties have had an opportunity to develop the record. *See Downing*, 265 F.3d at 1000 (reviewing district court's determination of likelihood of confusion on summary judgment); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1203 (9th Cir. 2000) (preliminary injunction); *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1041 (9th Cir. 1999) (preliminary injunction); *White v. Samsung Elecs. Am., Inc.*, 971

5

For similar reasons, the Court declines to rule on Defendant's arguments against Plaintiff's infringement claim at this juncture. Defendant maintains that its agreement with Plaintiff was a "mere consent," rather than a "trademark license," and thus "cannot be withdrawn," precluding any allegations of infringement. *See* Reply at 2. Defendant also contends that Plaintiff cannot overcome the fact that the trademark registration for Brother Thelonious is incontestable. *See* Mot. at 8; Reply at 8. As to the former argument—Defendant's failure to cite to Ninth Circuit authority notwithstanding—the Court declines to find at the motion to dismiss stage that Plaintiff could not, as a matter of law, revoke its consent, thus precluding it from making a claim of trademark infringement. As with likelihood of confusion, the nature of Plaintiff's consent is a fact-intensive inquiry more appropriately resolved on a more fully developed record. *See Hall v. S. Beach Skin Care, Inc.*, No. CV 13-8905 RSWL (PJWx), 2014 WL 1330311, at *4 (C.D. Cal. Apr. 2, 2014) (describing the question of consent in a false endorsement case as requiring the court "to consider evidence—evidence the Court cannot consider on a motion to dismiss"). Moreover, because Defendant's incontestability argument relies on its consent argument, *see* Reply at 9, the Court likewise declines to address it at this stage.[4]

Defendant's motion is therefore denied as to Plaintiff's false endorsement claim.

**B.    Plaintiff Pleads Sufficient Facts in Support of Its Contention That Under New Jersey Law, Defendant Infringed Its Right of Publicity.**

Plaintiff next alleges a violation of New Jersey's common law right of publicity. *See* FAC ¶¶ 68-78. Defendant contends that its arguments against the false endorsement claim—namely, the consent and incontestability arguments—also foreclose the claim under New Jersey law. *See* Mot. at 12-13; Reply at 12. Because the Court declines to engage such fact-intensive arguments at the pleading stage for the reasons stated above, Plaintiff needs only to state a claim under New Jersey law in order for it to survive Defendant's motion.

---

F.2d 1395, 1396 (9th Cir. 1992) (summary judgment); *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 345-46 (9th Cir. 1979) (bench trial), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003).
[4] For this reason, the Court need not address Defendant's request for judicial notice of the trademark registration for the Brother Thelonious label at this juncture. *See* Mot. at 5 n.2.

1 "The 'right of publicity' 'signif[ies] the right of an individual, especially a public figure or a celebrity, to control the commercial value and exploitation of his name and picture or likeness and to prevent others from unfairly appropriating this value for commercial benefit.'" *McFarland v. Miller*, 14 F.3d 912, 918 (3d Cir. 1994) (citing *Estate of Presley v. Russen*, 513 F. Supp. 1339, 1353 (D.N.J. 1981)). New Jersey courts "have explained the prima facie case for infringement of the right of publicity as a two-fold requirement, including allegations of validity and infringement." *Hart v. Elec. Arts, Inc.*, 740 F. Supp. 2d 658, 665 (D.N.J. 2010) (applying New Jersey law). The first prong, validity, "relates to whether the plaintiff 'owns an enforceable right in the identity or persona,' the likeness of which he alleges was misappropriated." *Id.* (citation omitted). The second prong, infringement, requires that the defendant (1) "used some aspect of [the plaintiff's] identity or persona" without the latter's permission, in a way that (2) renders the plaintiff "identifiable" from the defendant's use and (3) "is likely to cause damage to the commercial value of that persona." *See id.* (citation omitted); *see also Prima v. Darden Rests., Inc.*, 78 F. Supp. 2d 337, 350 (D.N.J. 2000) ("To allege a prima facie case for infringement of the right of publicity, the plaintiff must show both validity and infringement.") (citing treatise). Courts have been clear that a defendant is liable "for the tort of misappropriation of likeness *only if* defendant's use of plaintiff's likeness was for a predominantly commercial purpose, *i.e.*, if defendant was seeking to capitalize on [plaintiff's] likeness for purposes other than the dissemination of news or information." *Hart*, 740 F. Supp. 2d at 667 (quoting *Tellado v. Time-Life Books, Inc.*, 643 F. Supp. 904, 909-10 (D.N.J. 1986)) (emphasis added). The right of publicity survives the holder's death in New Jersey. *See McFarland*, 14 F.3d at 917-18.

Plaintiff has pled sufficient facts to state a prima facie claim of infringement of its right of publicity. As to validity, it is more than plausible that Plaintiff has a right "to control the commercial value and exploitation" of Monk's persona, and to "prevent others from unfairly appropriating this value for commercial benefit." *See McFarland*, 14 F.3d at 918. As to infringement, Plaintiff alleges that Defendant is using Monk's persona on the Brother Thelonious materials without its consent—at least as of January 11, 2016. *See* FAC ¶ 39. Plaintiff further alleges facts supporting the assertion that Monk is identifiable on these materials—not least

because of Monk's unique style, *see id.* ¶ 13, and because the name of the ale is Brother Thelonious, *see id.* ¶ 32. Moreover, Plaintiff alleges that since January 11, 2016, Defendant has continued to use Monk's name, image, and likeness "without compensating the Monk Estate," which is sufficient at this stage to show that Defendant's use is likely to cause damage to the commercial value of Monk's persona. And, given that Defendant is using Monk's persona to market and sell a beer, rather than disseminate news or information about Monk, Plaintiff has sufficiently pled that Defendant's alleged infringement is for a commercial purpose.

Accordingly, Defendant's motion is denied as to Plaintiff's right of publicity claim.

### C. Plaintiff Sufficiently Pleads a Claim for Unjust Enrichment Under California Law.

Last, Plaintiff alleges a standalone claim for unjust enrichment under California law,[5] contending that Defendant "was and continues to be unjustly enriched through unlicensed and unauthorized exploitation of the name, image and likeness of" Monk. *See* FAC ¶¶ 79-85. Defendant counters that "California does not recognize unjust enrichment as a separate cause of action." *See* Mot. at 13.

It is true that there is generally "no cause of action in California for unjust enrichment." *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003); *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (same). Unjust enrichment is not a "theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." *Melchior*, 106 Cal. App. 4th at 793 (citation and internal quotation marks omitted). "It is synonymous with restitution," *id.* (citation omitted), and "is typically sought in connection with a 'quasi-contractual' claim in order to avoid unjustly conferring a benefit upon a defendant where there is no valid contract," *Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291, 1307 (S.D. Cal. 2009) (citing *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004)). But a court may also take a further step: "[w]hen a plaintiff alleges unjust enrichment, a court may

---

[5] Plaintiff incorrectly asserts that "[t]he FAC sets forth a claim [of unjust enrichment] under either New Jersey or California law," Opp. at 11, contrary to the FAC's plain language, FAC ¶ 85 ("The Monk Estate is entitled to just compensation *under the common law of the State of California*.") (emphasis added).

'construe the cause of action as a quasi-contract claim seeking restitution.'" *Astiana*, 783 F.3d at 762 (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)).

Plaintiff asks this Court to apply the principle set forth in *Astiana* and construe its unjust enrichment claim as "one in quasi-contract seeking restitution for the money earned by [Defendant's] violations of [Plaintiff's] right of publicity." Opp. at 10. The Court will construe the cause of action accordingly. It is true that there is no action in quasi-contract "where there exists between the parties a valid express contract covering the same subject matter." *Rutherford Holdings*, 223 Cal. App. 4th at 231 (quoting *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996)). But, as alleged, there is at least some period of time during which no contract existed between Plaintiff and Defendant, *see* FAC ¶ 39, and for that period a quasi-contract claim would not impermissibly duplicative. Moreover, because the existence of a contract is a question of fact when parties are in conflict as to the facts, *see Vita Planning & Landscape Architecture, Inc. v. HKS Architects, Inc.*, 240 Cal. App. 4th 763, 771-72 (2015), the Court declines to make a finding on that point at this stage of the litigation. Given Plaintiff's allegation that Defendant continues to use Monk's persona "without permission of the Monk Estate and without compensating the Monk Estate," *see* FAC ¶ 40, it has sufficiently pled a cause of action for unjust enrichment.[6]

Defendant's motion is therefore denied as to Plaintiff's unjust enrichment cause of action.

//
//
//
//
//

---

[6] In the event Plaintiff cannot prove its unjust enrichment cause of action, its proposal to construe it as a remedy for its right of publicity claim under New Jersey law may be appropriate. *See* Opp. at 10. In discussing the "rationales for awarding entertainers and professional athletes a right of publicity," the Third Circuit quoted the Supreme Court in naming "the straightforward one of preventing unjust enrichment by the theft of good will." *Fleer Corp. v. Topps Chewing Gum, Inc.*, 658 F.2d 139, 149 n.15 (3d Cir. 1981) (quoting *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 576 (1977)).

## IV. CONCLUSION

Accordingly, for the foregoing reasons, Defendant's motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: 1/31/2018

                                                                                       _____
                                                                                       HAYWOOD S. GILLIAM, JR.
                                                                                       United States District Judge

10