

March 9, 2018

Honorable Magistrate Judge Donna M. Ryu
United States District Court
Oakland Courthouse, Courtroom 4 -3rd Floor
1301 Clay Street, Oakland, CA 94612

   Re:    Estate of Thelonious Monk v. North Coast Brewing Co., Inc.
           Case No. 4:17-cv-05015-HSG

Dear Magistrate Judge Ryu,

We are writing as counsel for the parties in the above-styled case pursuant to Your Honor's Order Re: Discovery Procedures (ECF 16). Plaintiff Thelonious Sphere Monk, JR., as Administrator of and on behalf of the Estate of Thelonious Sphere Monk, Deceased (the "Monk Estate") seeks a protective order pursuant to Federal Rule of Civil Procedure 26(c) concerning eighty three (83) requests for admission served by Defendant North Coast Brewing Co., Inc. ("North Coast") on the Monk Estate, a copy of which is attached as Exhibit 1.

*Scheduling Order*
On Jan. 26, 2018 the Court issued the following Scheduling Order (ECF 45): Fact discovery cut-off is June 13, 2018; Expert discovery cut-off date is June 20, 2018; Last day to file dispositive motions is Aug. 3, 2018; Last day to hear dispositive motions is Sept. 6, 2018; Pretrial conference is Nov. 13, 2018; Trial is Dec. 3, 2018.

Counsel discussed the matters raised below by telephone on March 7, 2018, but were unable to reach agreement.

*Monk Estate's Position*
This is a relatively straightforward case. The First Amended Complaint ("FAC") alleges three claims against North Coast: false endorsement in violation of the Lanham Act (Count I), violation of the Estate's rights of publicity under New Jersey law (Count III), and unjust enrichment (Count IV). At issue are the rights of the Monk Estate to the name, image and likeness of THELONIOUS MONK, the famous and iconic jazz pianist. The Amended Complaint explains the context in which this dispute arose:

> 37. Prior to this present dispute, T.S. Monk verbally agreed to permit North Coast to utilize the THELONIOUS MONK name, image and likeness for the limited purpose of solely marketing and distributing BROTHER THELONIOUS BELGIAN STYLE ABBEY ALE in exchange for North Coast's agreement to donate a portion of the profits from the sale of BROTHER THELONIOUS BELGIAN STYLE ABBEY ALE to the Thelonious Monk Institute of Jazz.
>
> 38. At no time prior has T.S. Monk or the Monk Estate authorized North Coast to utilize the THELONIOUS MONK name, image or likeness for the sale of merchandise such as

Schneider Rothman Intellectual Property Law Group, PLLC
4651 N Federal Hwy, Boca Raton, FL 33431   P: 561.404.4350   F: 561.404.4353   www.sriplaw.com

Page 2

> cups, hats, hoodies, iron on patches, soap, t-shirts, tap handles, metal and neon signs, pins, playing cards, mouse pads, posters, and food products.
>
> 39. On January 11, 2016, Monk notified North Coast that any consent previously given to North Coast by T.S. Monk or the Monk Estate for North Coast to use the THELONIOUS MONK name, image or likeness for sale of BROTHER THELONIOUS BELGIAN STYLE ABBEY ALE was immediately terminated and revoked, and that North Coast could no longer use the THELONIOUS MONK name, image and likeness without entering into a merchandising agreement with the Estate of Thelonious Monk, and advised North Coast that all royalty payments must be made to The Monk Estate.
>
> 40. Despite this notice, since January 11, 2016, North Coast has continued to exploit the THELONIOUS MONK name, image and likeness without permission of the Monk Estate and without compensating the Monk Estate, causing significant damage to the Monk Estate and effecting the value of the THELONIOUS MONK name, image and likeness.

This Court determined in its order denying North Coast's Motion to Dismiss that the Monk Estate "pled sufficient facts to state a claim of false endorsement" in violation of the Lanham Act, and simultaneously "declined to rule on Defendant's arguments against Plaintiff's infringement claim at this juncture." (Doc. 47 at 5-6).  This Court also determined that the Monk Estate had pled sufficient facts to support its claims for violation of its rights of publicity under New Jersey law, and its unjust enrichment claim. (Doc. 47 at 6-10).

After the Court's ruling, North Coast immediately served the requests for admission at issue. North Coast's requests are not intended to narrow issues for trial, but rather are an improper attempt to "pick every nit that a squad of lawyers could possibly see" in this case. *Wigler v. Electronic Data Systs. Corp.*, 108 F.R.D. 204, 205 (D. Md. 1985).

Neither party has taken any depositions.  North Coast has not served any interrogatories on the Monk Estate. North Coast's requests do not concern appropriate subjects of requests for admission, like the genuineness of documents or matters concerning which there is no genuine dispute.  The admissions concern disputed facts and implicate disputed conclusions of law.[1] "[R]equests for admissions as to central facts in dispute are beyond the proper scope of the rule and improper. *Modern, Inc., et al. v. State of Florida*, 2005 U.S. Dist. LEXIS 35515 *5 (M.D. Fla. July 18, 2005). *See also Tuvalu v. Woodford*, 2006 U.S. Dist. LEXIS 80642, *18-19 (E.D. Cal. Nov. 2, 2006)(requests for admissions should not be used to establish "facts which are obviously in dispute," or "demand that the other party admit the truth of a legal conclusion").

North Coast has served these at the earliest stage in the litigation.  And while the volume is not outrageously large, it is large enough, in combination with the improper subjects chosen, to make the requests oppressive and burdensome to answer. Your Honor has previously limited requests for admission to 25 requests other than genuineness of documents.  *Stokes v. Interline Brands Inc.*, No.

---

[1] For example, falling into the category of requests seeking admission concerning disputed questions of law is number 10 which asks "Admit that NORTH COAST has never been a licensee of PLAINTIFF." Whether or not North Coast was a licensee calls for a legal conclusion, and is not a proper topic for an admission.  "Requests for admissions cannot be used to compel an admission of a conclusion of law." *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1057 (S.D. Cal. 1999).

Page 3

C-12-05527 JSW (DMR), 2013 U.S. Dist. LEXIS 163181 (N.D. Cal. Nov. 14, 2013). A similar limitation is called for here.[2]

### *North Coast's ("NC") Position*

Plaintiff Monk is requesting a protective order to excuse it from responding to each and every one of NC's validly-served RFAs. Monk's arguments above reveal the baselessness of its position, and show that the motion for protective order is being interposed for an entirely improper purpose.

We are hardly "at the earliest stage in the litigation," as Monk argues. The Complaint was filed in August 2017, the FAC was filed in September 2017, and Discovery closes in June 2018. Moreover, there is no rule (or practice) limiting RFAs to the end of discovery or the latest stages of litigation. To the contrary, RFAs are an effective (though sometimes overlooked) vehicle to narrow the issues by eliminating facts that are not disputed. See Advisory Comm. Note to 1970 Amendment to Fed. R. Civ. P. 36; *Asea, Inc. v. S. Pac. Transp. Co*., 669 F.2d 1242, 1245 (9th Cir. 1981). RFAs are very effective at both the outset of discovery (i.e., to help focus the parties' time and resources to discovery on factual issues that are truly in dispute) and near the close of dicovery (i.e., to narrow the issues upon which proof will be needed at trial). See 7-36 Moore's Federal Practice - Civil § 36.02 (2018)  (RFAs can save litigants valuable time and substantial money[3], which would otherwise have to be spent to establish certain facts through complex, costly discovery procedures, such as interrogatories, depositions, and requests for the production of documents.   Many courts have stressed this aspect of the efficacy of requests for admission.)  Here, the RFAs are intended to help focus NC's limited deposition time of Mr. Monk Jr., and to make the most of NC's limited interrogatories, by questioning Plaintiff about only what is truly disputed.

Importantly, the RFAs ask Monk to confirm facts that NC already believes to be true.  A brief review from among only the first few RFAs highlights why they are entirely appropriate and should have been answered.  As noted above, an important allegation of this case is that, although NC had permission to use the BROTHER THELONIOUS brand and name, image and likeness of Mr. Monk Sr. on ale, "At no time prior [to the filing of the Complaint] has T.S. Monk or the Monk Estate authorized North Coast to utilize the THELONIOUS MONK name, image or likeness for the sale of merchandise such as cups, hats, hoodies, iron on patches, soap, t-shirts, tap handles, metal and neon signs, pins, playing cards, mouse pads, posters, and food products." (FAC, para. 38) [Emphasis added].

In discovery last month, North Coast produced copies of Monk's Facebook posts and photos over the years that plainly reflect his authorization—and, indeed, his encouragement—of NC's sales of non-ale goods (i.e., BEER GEAR).  *See, e.g.,* NC production document NCBC000143 (Monk's Facebook post of November 24, 2013), which is a photo of Mr. Monk Jr. wearing a long-sleeve t-shirt bearing

---

[2] A motion for protective order does not toll the time to respond to discovery, so in order to avoid waiving the Monk Estate's objections in the event this motion is denied, the Monk Estate is responding and objecting to the requests for admission today, the date they are due.  The Monk Estate has also answered request for admission No. 66.

[3] Ironically, it would plainly be less expensive (for both plaintiff and defendant) and less wasteful of the Court's limited resources, if Monk had simply answered the RFAs, rather than engage in briefing and argument on a motion for protective order.

Schneider Rothman Intellectual Property Law Group, PLLC
4651 N Federal Hwy, Boca Raton, FL 33431   P: 561.404.4350   F: 561.404.4353   www.sriplaw.com

Page 4

<u>the accused image of THELONIOUS MONK and the BROTHER THELONIOUS brand</u>, accompanied by the following text:

> "Anyone who follows me on social media knows that I live in my Brother Thelonious gear especially at this time of year…. Thanks to [NC's] Doug and Deborah Moody's commitment to keep jazz alive and support the development of it's [sic] future, a portion of the proceeds of the sale of all Brother Thelonious products – the award-winning Belgian ale **and all the wonderful things in [North Coast's] online store** [i.e., the goods accused in FAC para. 38] go to the Thelonious Monk Institute of Jazz." [Emphasis added]

Similarly, and again merely by way of example, production document NCBC000146 reflects another Facebook post by Monk on March 20, 2013, wherein <u>Mr. Monk Jr. is depicted wearing a pullover shirt bearing the Brother Thelonious brand and the accused name, image or likeness of Thelonious Monk</u>, with the following text accompanying the post:

> My 'Brother Thelonious' pullover has become my uniform. Perfect for stepping out for breakfast with a light and golden stack of pancakes on a wintry day. I'd encourage you to support what they [North Coast] do by liking their FB page.

The above Monk Facebook post concludes with a link to NC's Facebook page and online store where the accused BEER GEAR (which the FAC falsely avers was never authorized) is sold. The thousands of documents in NC's document production contain <u>many more examples.</u> That Monk characterizes these outrageous material inconsistencies as "lawyers picking nits" is an insult to NC and the Court, and seeks to make a mockery of the discovery process and litigation.

Against that background, here are just a few of the RFAs to which Monk now refuses to respond:

> RFA #5:  Admit that PLAINTIFF knew at least as of March 20, 2013 that NORTH COAST was selling or distributing BEER GEAR bearing the ACCUSED IMAGE via NORTH COAST's online store.
>
> RFA #6:  Admit that PLAINTIFF knew at least as of March 20, 2013 that NORTH COAST was selling or distributing BEER GEAR bearing the BROTHER THELONIOUS brand via NORTH COAST'S online store.
>
> RFA #7:  Admit that PLAINTIFF knew, as of at least November 24, 2013, that NORTH COAST was donating a portion of the profits from the sale of all products bearing the ACCUSED IMAGE, including ALE and BEER GEAR, to the MONK INSTITUTE.
>
> RFA #9:  Admit that prior to the filing of the Complaint herein, PLAINTIFF encouraged or asked PERSONS other than PLAINTIFF or DEFENDANT to visit North Coast's online store and to consider purchasing BEER GEER.[4]

Indeed, Monk's refusal to respond to – much less <u>admit</u> – any of the RFAs is wholly improper. "Parties may not view requests for admission as a mere procedural exercise requiring minimally acceptable conduct. They should focus on the goal of the Rules, full and efficient discovery, not

---

[4] BEER GEAR has been defined in Definition N of the RFAs as "any or all goods sold or distributed by North Coast other than ALE, including but not limited to the goods referenced in para. 38 of the FAC."

Schneider Rothman Intellectual Property Law Group, PLLC
4651 N Federal Hwy, Boca Raton, FL 33431   P: 561.404.4350   F: 561.404.4353   www.sriplaw.com

evasion...." *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 936–37 (9th Cir.1994); see also *Integrated Circuit Sys. v. Realtek Semiconductor Co.*, No. C-00-4035, 2002 U.S. Dist. LEXIS 6052, *4-5 (N.D. Cal. April 5, 2002) (reminding both sides that the Fed.R.Civ.P. are designed to "encourage extrajudicial discovery with a minimum of court intervention.") [5]

Under these circumstances, in which Monk has wholesale refused to answer any RFAs – utterly without good cause[6] -- Monk is needlessly and vexatiously multiplying this litigation, for which Monk and his counsel should be held jointly and severally liable. See 28 U.S.C. 1927. NC expressly warned Monk of its liability for this conduct during the "meet and confer" and in a detailed follow-up letter yesterday, during which NC implored Monk to simply answer the RFAs rather than seek a protective order. Plainly, NC's production documents and RFAs have put Monk in a bind for which it seeks to bury its head – at least until mediation occurs later this month. Indeed, admiting the RFAs would be devastating to Monk's case, and its lawyers apparently believe that denying the requests – in light of the documents now produced in discovery – would be unethical.[7] Neither of those concerns is any reason to deny NC answers to its validly-served RFAs. Indeed, the fact that the allegations of the FAC directly contradict Mr. Monk Jr.'s statements and actions over the years highlights why NC is entitled to answers to the RFAs.

Having refused to heed NC's two clear warnings, NC respectfully asks the Court to deem NC's First Set of RFAs admitted, and to issue an order to show cause why Monk and its counsel should not be subject to sanctions under 28 U.S.C. 1927, Fed. R.Civ. P. 11, and/or the Court's inherent power to sanction.

Sincerely,

**Schneider Rothman Intellectual Property Law Group, PLLC, Counsel for Plaintiff Monk**

/s/ Joel B. Rothman_____
Joel B. Rothman
Board Certified in Intellectual Property Law

**McDermott Will & Emery LLP, Counsel for Defendant North Coast**

/s/ Robert W. Zelnick_____
Robert W. Zelnick

Enclosures

---

[5] Monk's citation to Your Honor's decision in *Stokes v. Interline Brands Inc.*, No. C-12-05527 JSW (DMR), 2013 U.S. Dist. LEXIS 163181, *6-7 (N.D. Cal. Nov. 14, 2013), is inapposite. There, the volume of the RFAs (i.e., 1059 requests totaling 162-pages) was unduly burdensome, since the case was not complex. Further, the Court disagreed that the class action nature of the case justified the number, because the RFAs did not seek discovery about the putative class, but instead were targeted to Plaintiff. *Id.* at 7.

[7] It is further notable that Monk did not raise any objections to the RFAs until more than 3 weeks after the RFAs were served -- and less than a week before answers were due. Indeed, Monk did not send NC this draft letter until less than 24 hours ago.

Schneider Rothman Intellectual Property Law Group, PLLC
4651 N Federal Hwy, Boca Raton, FL 33431  P: 561.404.4350  F: 561.404.4353  www.sriplaw.com