1  ROBERT ZELNICK (*Pro Hac Vice*)
   rzelnick@mwe.com
2  REBECCA DUTTRY
   rduttry@mwe.com (*Pro Hac Vice*)
3  McDERMOTT WILL & EMERY LLP
   500 North Capitol Street, N.W.
4  Washington, D.C. 20001-1531
   Telephone:  202-756-8000
5  Facsimile:  202-756-8087

6  Brent A. Hawkins (SBN: 314266)
   bhawkins@mwe.com
7  Jodi L. Benassi (SBN: 309048)
   jbenassi@mwe.com
8  MCDERMOTT WILL & EMERY LLP
   275 Middlefield Road, Suite 100
9  Menlo Park, CA 94025
   Tel:  (650) 815-7400
10 Fax:  (650) 469-7401

11 Attorneys for *North Coast Brewing Co., Inc.*

12 **IN THE UNITED STATES DISTRICT COURT**

13 **IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14 **OAKLAND DIVISION**

| | |
|---|---|
| 15 THELONIOUS SPHERE MONK, JR., as Administrator of and on behalf of the ESTATE OF THELONIOUS SPHERE MONK, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>NORTH COAST BREWING CO., INC., a California Corporation,<br><br>Defendant. | CASE NO. 4:17-CV-05015 HSG (DMR)<br><br>**OPPOSITION TO THE MOTION OF PLAINTIFF THELONIOUS SPHERE MONK, JR., AS ADMINISTRATOR OF AND ON BEHALF OF THE ESTATE OF THELONIOUS SPHERE MONK (DECEASED), TO STRIKE NORTH COAST'S BREWING CO., INC.'S AFFIRMATIVE DEFENSES**<br><br>Date:  June 7, 2018<br>Time:  2:00 p.m.<br>Courtroom 2, 4th Floor<br><br>**Hon. Haywood S. Gilliam, Jr.** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................... 1

II. THE COURT SHOULD DENY PLAINTIFF'S MOTION TO STRIKE ......................... 1
   A. The Legal Standard For Striking Affirmative Defenses Is Demanding ................... 1

III. ARGUMENT ........................................................................................................... 3
   A. The Monk Estate's Reason for Seeking to Strike All of North Coast's Affirmative Defenses Belies the Merits of The Monk Estate's Arguments .......... 3
   B. North Coast's Affirmative Defenses Are Sufficiently Pled and Provide Fair Notice of the Affirmative Defenses Raised ............................................................ 6
      1. North Coast's Eighth, Eleventh, and Twenty-Eighth Affirmative Defenses ...................................................................................................... 7
      2. North Coast's Fourteenth Affirmative Defense ......................................... 8
      3. North Coast's Fifteenth and Twentieth Affirmative Defenses .................. 8
      4. North Coast's Sixteenth Affirmative Defense ........................................... 9
      5. North Coast's Twenty-Fifth, Twenty-Sixth, and Twenty-Seventh Affirmative Defenses ............................................................................... 10
   C. If the Court Were Inclined to Strike Any Part of Defendant's Pleadings, North Coast Should Be Granted Leave to Amend .............................................. 12

IV. CONCLUSION ..................................................................................................... 12

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

# TABLE OF AUTHORITIES

Page

**CASES**

*ALLTEL Info. Servs., Inc. v. F.D.I.C.*
194 F.3d 1036 (9th Cir. 1999) .................................................................................................. 11

*Anheuser–Busch, Inc. v. Starley*
28 Cal.2d 347, 170 P.2d 448 (1946) ........................................................................................ 11

*Astiana v. Ben & Jerry's Homemade, Inc.*
2011 WL 2111796 (N.D. Cal. 2011) ......................................................................................... 2

*Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*
718 F. Supp.2d 1167 (N.D. Cal. 2010) ...................................................................................... 2

*Bay Area Roofers Health & Welfare Tr. v. Sun Life Assurance Co. of Canada*
No. 13-cv-4192, 2013 WL 6700017 (N.D. Cal. Dec. 19, 2013) ................................................ 7

*Berkeley Unified Sch. Dist. of Alameda Cty. v. James I Barnes Const. Co.*
112 F. Supp. 396 (N.D. Cal. 1953) ............................................................................................ 7

*Conjugal Partnership v. Conjugal Partnership*
22 F.3d 391 (1st Cir. 1994) ...................................................................................................... 11

*Conley v. Gibson*
355 U.S. 41 (1957) ..................................................................................................................... 9

*Convoy Corp. v. Sperry Rand Corp.*
601 F.2d 385 (9th Cir. 1979) ................................................................................................... 12

*Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*
911 F.2d 242 (9th Cir. 1990) ................................................................................................... 12

*Cusano v. Klein*
264 F.3d 936 (9th Cir. 2001) ................................................................................................... 10

*Dodson v. Munirs Co.*
No. CIV. S-13-0399 LKK, 2013 WL 3146818 (E.D. Cal. June 18, 2013) ................................ 9

*Eminence Capital, L.L.C. v. Aspeon, Inc.*
316 F.3d 1048 (9th Cir. 2003) ................................................................................................. 12

*Federal Deposit Ins. Corp. v. Dintino*
167 Cal. App. 4th 333 (2008) .................................................................................................. 10

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*
No. 15-1893, 2016 WL 3017552 (N.D. Cal. May 26, 2016) ................................................... 11

*Foman v. Davis*
371 U.S. 178 (1962) ................................................................................................................. 12

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

DM_US 90501809-2.072542.0013       - ii -       OPPOSITION TO PLTF'S M/STRIKE
AFFIRMATIVE DEFENSES
CASE NO. C-17-05015 HSG (DMR)

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Hip Hop Bev. Corp. v. Ric Representacoes Importacao e Comercio Ltda.*
220 F.R.D. 614 (C.D. Cal. 2003) .................................................................................................. 12

*Holmberg v. Armbrecht*
327 U.S. 392 (1946) ................................................................................................................ 9, 10

*In re Duque*
No. BAP CC-05-1069-MAMC, 2005 WL 6960181 (B.A.P. 9th Cir. Dec. 30, 2005) ............... 11

*J & J Sports Productions, Inc. v. Mendoza-Govan*
Case No. 10-CV-05123 (N.D. Cal. 2011) ................................................................................... 7

*Jansen v. Travelers Commercial Ins. Co.*
No. 16-CV-04834-JST, 2017 WL 607610 (N.D. Cal. Feb. 15, 2017) ....................................... 11

*Jarrow Formulas, Inc. v. Nutrition Now, Inc*.
304 F.3d 829 (9th Cir. 2002) ....................................................................................................... 9

*Karl Storz Endoscopy-America, Inc. v. Surgical Technologies, Inc*.
285 F.3d 848 (9th Cir. 2002) ..................................................................................................... 10

*Kohler v. Islands Rests*., LP
280 F.R.D. 560 (S.D.Cal.2012) ................................................................................................... 9

*Kuang Xuan Liu v. Win Woo Trading, LLC*
No. 14-CV-02639-KAW, 2014 WL 7140514 (N.D. Cal. Dec. 12, 2014) ................................... 7

*Lennon v. United States Theatre Corp.*
920 F.2d 996 (D.C. Cir. 1990) .................................................................................................. 11

*MIC Prop. and Cas. Corp. v. Kennolyn Camps, Inc*.
No. 5:15-CV-00589 EJD, 2015 WL 4624119 (N.D. Cal. Aug. 3, 2015) .................................... 8

*Murphy v. Trader Joe's*
No. 16-CV-02222-SI, 2017 WL 235193 (N.D. Cal. Jan. 19, 2017) .......................................... 10

*Mysel v. Gross*
70 Cal.App.3d Supp. 10, 138 Cal. Rptr. 873 (1977) ................................................................... 9

*New York City Employees' Retirement System v. Berry*
667 F. Supp. 2d 1121 (N.D. Cal. 2009) ....................................................................................... 2

*NLRB v. Pilot Freight Carriers, Inc*.
604 F.2d 375 (5th Cir. 1979) ..................................................................................................... 11

*Passantino v. Johnson & Johnson Consumer Prods*.
212 F.3d 493 (9th Cir. 2000) ..................................................................................................... 11

*Qarbon.com Inc. v. eHelp Corp.*
315 F.Supp.2d 1046 (N.D.Cal.2004) .......................................................................................... 1

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

# TABLE OF AUTHORITIES
(continued)

Page

*Rivers v. County of Marin*
  2006 WL 581096 (N.D. Cal. 2006) .................................................................................. 2

*Rosales v. Citibank*
  133 F.Supp.2d 1177 (N.D. Cal. 2001) ............................................................................. 2

*Sayre v. Musicland Group, Inc.*
  850 F.2d 350 (8th Cir.1988) ........................................................................................... 11

*Schaeffer v. Gregory Vill. Partners, L.P.*
  105 F. Supp. 3d 951 (N.D. Cal. 2015) ............................................................................. 9

*Smith v. Wal-Mart Stores*
  No. C 06-2069 SBA, 2006 WL 2711468 (N.D. Cal. Sept. 20, 2006) ........................ 9, 11

*Villarreal v. Cty. of Monterey*
  254 F. Supp. 3d 1168 (N.D. Cal. 2017) ........................................................................... 2

*Wagner v. First Horizon Pharm. Corp.*
  464 F.3d 1273 (11th Cir. 2006) ....................................................................................... 6

*Weddle v. Bayer AG Corp.*
  No. 11CV817 JLS, 2012 WL 1019824 (S.D. Cal. Mar. 26, 2012) ............................... 11

*Whittlestone, Inc. v. Handi-Craft Co.*
  618 F.3d 970 (9th Cir. 2010) ........................................................................................... 8

*Wyshak v. City Nat'l Bank*
  607 F.2d 824 (9th Cir.1979) ................................................................................... 1, 9, 12

**RULES**

Fed.  R. Civ. P. 12(f) ............................................................................................................. 8

Fed. R. Civ. P. 15(a) ........................................................................................................... 12

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

## I. INTRODUCTION

At first blush, it may seem that the lawyers for The Monk Estate told a potentially plausible tale in their Complaint and First Amended Complaint ("FAC"). ECF Nos. 1 and 10. Indeed, they plead just enough facts to survive a motion to dismiss. *See* ECF No. 47. But parties do not win cases based on allegations, and discovery has revealed that the critical allegations of the FAC are verifiably false, and that they must have been false when made. The Monk Estate has called these extensive, highly material inconsistencies as just "lawyers picking nits."

Against the factual development in this case, The Monk Estate has now moved to strike *all* of North Coast's 27 Affirmative Defenses, apparently because that is all that remains for The Monk Estate's counsel to try at this point.[1] After briefly reviewing the law regarding the pleading requirements for affirmative defenses, North Coast will explain in more detail how the critical allegations of the FAC have been confirmed as false, after which North Coast respectfully anticipates that it will be clear to the Court why all of North Coast's affirmative defenses apply and have been properly plead.

## II. THE COURT SHOULD DENY PLAINTIFF'S MOTION TO STRIKE

### A. THE LEGAL STANDARD FOR STRIKING AFFIRMATIVE DEFENSES IS DEMANDING

Federal Rule of Civil Procedure 12(f) authorizes a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "If the court chooses to strike a defense, leave to amend should be freely given so long as there is no prejudice to the opposing party." *Qarbon.com Inc. v. eHelp Corp.,* 315 F.Supp.2d 1046, 1049 (N.D.Cal.2004) (*citing Wyshak v. City Nat'l Bank,* 607 F.2d 824, 826 (9th Cir.1979)). "The key to determining the sufficiency of pleading an affirmative defense is whether it gives [the] plaintiff fair notice of the defense." *Wyshak*, 607 F.2d at 827.

---

[1] The Monk Estate has also objected to answering 82 of the 83 Requests for Admission served by North Coast on February 7, 2018 (*see* ECF No. 59-1), and has refused to produce documents relating to information that The Monk Estate allegedly reviewed in making an alleged "reasonable effort" to admit or deny each of the RFAs. Those issues are pending before Magistrate Judge Ryu. *See* ECF Nos. 59, 63 and 67.

Motions to strike are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits. *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp.2d 1167, 1170 (N.D. Cal. 2010) (citations omitted); *Villarreal v. Cty. of Monterey*, 254 F. Supp. 3d 1168 (N.D. Cal. 2017) (Motions to strike are generally disfavored and should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation; if there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion.) *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *13, (N.D. Cal. 2011) (same); *Rosales v. Citibank*, 133 F.Supp.2d 1177, 1180 (N.D. Cal. 2001) (same); *Rivers v. County of Marin*, 2006 WL 581096, at *2 (N.D. Cal. 2006) (Where the moving party cannot adequately demonstrate such prejudice, courts frequently deny motions to strike "even though the offending matter literally [was] within one or more of the categories set forth in Rule 12(f).)

Moreover, as this District has repeatedly observed, motions to strike should only be granted if the pleading may prejudice one or more of the parties to the suit. *New York City Employees' Retirement System v. Berry*, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009). Here, The Monk Estate makes no attempt to meet the required showing and identifies no prejudice flowing from the inclusion of any the 27 remaining affirmative defenses[2] asserted in North Coast's Answer, and it should not be permitted to do so for the first time in a reply brief.

North Coast did not merely recite legal conclusions or make a series of conclusory statements without stating why each affirmative defense exists. In fact, the opposite is true, and North Coast's pleading of affirmative defenses exceeds the requirements of the law. Because North Coast's factual allegations give The Monk Estate fair and ample notice of the nature of its affirmative defenses, they should not be stricken.

---

[2] In an effort to avoid needless disputes, North Coast agreed to withdraw affirmative defense nos. 1 and 29.

McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

## III. ARGUMENT

### A. THE MONK ESTATE'S REASON FOR SEEKING TO STRIKE ALL OF NORTH COAST'S AFFIRMATIVE DEFENSES BELIES THE MERITS OF THE MONK ESTATE'S ARGUMENTS

Counsel for The Monk Estate has identified the following allegations of the FAC as the essence of the FAC:[3]

> 37. Prior to this present dispute, T.S. Monk verbally agreed to permit North Coast to utilize the THELONIOUS MONK name, image and likeness for the limited purpose of solely marketing and distributing BROTHER THELONIOUS BELGIAN STYLE ABBEY ALE in exchange for North Coast's agreement to donate a portion of the profits from the sale of BROTHER THELONIOUS BELGIAN STYLE ABBEY ALE to the Thelonious Monk Institute of Jazz.
>
> 38. At no time prior has T.S. Monk or the Monk Estate authorized North Coast to utilize the THELONIOUS MONK name, image or likeness for the sale of merchandise such as cups, hats, hoodies, iron on patches, soap, t-shirts, tap handles, metal and neon signs, pins, playing cards, mouse pads, posters, and food products.
>
> 39. On January 11, 2016, Monk notified North Coast that any consent previously given to North Coast by T.S. Monk or the Monk Estate for North Coast to use the THELONIOUS MONK name, image or likeness for sale of BROTHER THELONIOUS BELGIAN STYLE ABBEY ALE was immediately terminated and revoked, and that North Coast could no longer use the THELONIOUS MONK name, image and likeness without entering into a merchandising agreement with the Estate of Thelonious Monk, and advised North Coast that all royalty payments must be made to The Monk Estate.
>
> 40. Despite this notice, since January 11, 2016, North Coast has continued to exploit the THELONIOUS MONK name, image and likeness without permission of the Monk Estate and without compensating the Monk Estate, causing significant damage to the Monk Estate and affecting the value of the THELONIOUS MONK name, image and likeness.

In denying North Coast's Motion to Dismiss (ECF No. 47), the Court noted the "fact-intensive" nature of the claims in this case (*id.* at 5-6), and, as the Court was required to do for purposes of a Rule 12(b)(6) Motion, the Court accepted those factual allegations as true. *Id.*, *passim*. The Court noted in particular that "Plaintiff also states that Defendant has never had authorization to use Monk's name, image or likeness 'for the sale of merchandise.'" *Id.* at 2.

---

[3] In a joint discovery letter to the Court, The Monk Estate's counsel acknowledged that these are the central allegations of the FAC. *See* ECF No. 59 at 1-2.

Discovery has revealed many facts that undeniably contradict Monk's central allegations. For example, North Coast produced copies of Monk's Facebook posts and photos over the years that plainly reflect Monk's authorization – and, indeed, his encouragement – of North Coast's sales of non-ale merchandise (*i.e.*, BEER GEAR[4]). *See, e.g.,* Declaration of Robert W. Zelnick ("Zelnick Decl."), Ex. 1, filed herewith (North Coast production document NCBC000143: Monk's Facebook post of November 24, 2013), namely a photo of Mr. Monk Jr. *wearing a long-sleeve t-shirt bearing the accused image of THELONIOUS MONK and the BROTHER THELONIOUS brand*, accompanied by the following text:

> "Anyone who follows me on social media knows that I live in my Brother Thelonious gear especially at this time of year…. Thanks to [North Coast's] Doug[5] and Deborah Moody's commitment to keep jazz alive and support the development of it's [sic] future, a portion of the proceeds of the sale of all Brother Thelonious products – the award-winning Belgian ale **and all the wonderful things in [North Coast's] online store** [*i.e.*, the goods accused in FAC paragraph 38] go to the Thelonious Monk Institute of Jazz."

Zelnick Decl., Ex. 1 (emphasis added).

Similarly, and again merely by way of example, production document NCBC000146 reflects another Facebook post by Mr. Monk Jr. on March 20, 2013, wherein *Mr. Monk Jr. is depicted wearing a pullover shirt bearing the Brother Thelonious brand and the accused name, image or likeness of Thelonious Monk*, with the following text accompanying the post:

> My 'Brother Thelonious' pullover has become my uniform. Perfect for stepping out for breakfast with a light and golden stack of pancakes on a wintry day. I'd encourage you to support what they [North Coast] do by liking their FB page.

(*See* Zelnick Decl., Ex. 2.) The above Monk Facebook post concludes with a link to North Coast's Facebook page and online store where the accused BEER GEAR (which the FAC at paragraph 38 falsely avers was never authorized) is sold. (*Id.*) The thousands of documents in North Coast's document production contain *many more examples,* and Monk has very recently –

---

[4] In discovery, North Coast has defined BEER GEAR as "any and all goods sold by North Coast other than ALE, including but not limited to the goods referenced at paragraph 38 of the FAC." (*See* Definition 11 in North Coast's First Set of Requests for Admission.)

[5] Mr. Moody is Senior Vice President of North Coast.

and only after substantial sustained pressure from and expense by North Coast – produced its own copies of many of these same documents in discovery.[6]

Discovery has likewise shown dozens of photos of Mr. Monk Jr. *wearing* BEER GEAR since 2009 *(see*, *e.g.*, Zelnick Decl., Ex. 3), and Mr. Monk Jr. has acknowledged this at his deposition. (*See*, *e.g.*, *id*., Ex. 4 at 66:2-68:14; 72:2-73:18; 79:16-81:1; 87:19-88:25.) He has even not denied that he has publicly worn BEER GEAR bearing the accused image of this father after the Complaint and FAC were filed in this case, which is particularly at odds with Monk's allegation of irreparable injury or other damage from North Coast's "unauthorized use" of the Monk name, image or likeness. (*See, e.g.*, Zelnick Decl., Ex. 4 at 70:10-71:1); *cf.* FAC, ECF No. 10, at ¶¶ 51-55 and 77-78.

In regard to paragraph 40 of the FAC, Mr. Monk Jr. admitted that North Coast's use of the accused image on BEER GEAR has *enhanced* and *brought honor to* the Monk Estate's reputation (*see* Zelnick Decl., Ex. 4 at 70:10-71:1; 73:14-74:11; 142:17-143:13), and The Monk Estate's Rule 30(b)(6) designee on the Monk Estate's alleged damages admitted that the Monk Estate suffered no harm due to North Coast's alleged "unauthorized use" of the accused image on BEER GEAR (or otherwise). (*See* Zelnick Decl., Ex. 5 at pp. 39 and 47; *see also id*., Ex. 4 at 141:2-4.)

It is simply not credible to believe that The Monk Estate did not know the foregoing facts when its lawyers plead, and the Monk Estate approved, *e.g.*, critical paragraph 38 of the FAC.

North Coast could go on and on in recounting the discovery record that has been developed in this case. But North Coast respectfully submits that for purposes of the instant Motion to Strike, the above citations are sufficient to understand the context of The Monk Estate's Motion to Strike, and for the Court to appreciate that the many affirmative defenses supported by the above facts have been well-plead.[7]

---

[6] Citing a case from the district court in Maryland, Monk's counsel has argued that these and other shocking inconsistencies over a nine-year period are merely "lawyers picking nits." *See* ECF No. 59 at 2.

[7] Of course, North Coast would be glad to supplement this evidence if the Court so desires.

### B. NORTH COAST'S AFFIRMATIVE DEFENSES ARE SUFFICIENTLY PLED AND PROVIDE FAIR NOTICE OF THE AFFIRMATIVE DEFENSES RAISED

The Monk Estate seeks to strike *all* of North Coast's affirmative defenses as an alleged "improper shotgun style of pleading." In ostensible support, The Monk Estate cites to one, out-of-circuit, class action securities case, containing a fraud element which required the plaintiff to plead with particularity pursuant to FRCP 9(b). *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273 (11th Cir. 2006). *See* ECF No. 68. The Monk Estate's reliance on this case is misplaced, for many reasons.

In *Wagner*, the court found that close to 100 pages of facts were insufficiently linked to the claims in the complaint for the court to connect the claims to the causes of action. The court noted, "The central problem is that the factual particularity of the first 175 paragraphs is not connected to the otherwise generally pled claim in any meaningful way." *Id.* at 1279. The court found *that situation* to constitute proverbial shotgun pleading. *Id.* Still, in the only case cited by The Monk Estate, the 11th Circuit denied the motion to dismiss and ordered repleading of the affirmative defenses. *Id.*

Moreover, The Monk Estate's argument about "shotgun pleading" ignores the fact that The Monk Estate took the same approach in its Complaint and FAC. ECF Nos. 1 and 10. For example, paragraphs 42, 56, 68 and 79 of the FAC all purport to "incorporate by reference" the allegations of paragraphs 1-41 of the FAC. *See* ECF No. 10. The Monk Estate cannot insist on a higher standard for *affirmative defenses* than apply to its own Complaint and FAC.

Here, North Coast has not left the reader to wonder what facts pertain to each of its affirmative defenses. North Coast's factual allegations in support of its affirmative defenses go far beyond the buzzwords and legal conclusion.

Beyond The Monk Estate's catch-all request to strike all of North Coast's Affirmative Defenses, The Monk Estate has made further arguments with regard to a few specific Affirmative Defenses, which North Coast will now treat in turn.

### 1. North Coast's Eighth, Eleventh, and Twenty-Eighth Affirmative Defenses

With respect to North Coast's Eighth (contract), Eleventh (breach of contract), and Twenty-Eighth (unjust enrichment) Affirmative Defenses, The Monk Estate acknowledges that North Coast alleged facts in connection with these defenses. ECF No. 68 at pp. 4-8. The Monk Estate argues (incorrectly) that these affirmative defenses are improper and appear to be counterclaims seeking affirmative relief couched in affirmative defenses. *Id*. The Monk Estate cites to *J & J Sports Productions, Inc. v. Mendoza-Govan* in support of its argument, but reliance on that case is misguided, as none of the 20 affirmative defenses analyzed by the court in that case are similar to the defenses before this Court.[8]

"An affirmative defense is an assertion raising new facts and arguments that, if true, will defeat plaintiff's claim, even if all allegations in [the] complaint are true." *Bay Area Roofers Health & Welfare Tr. v. Sun Life Assurance Co. of Canada*, No. 13-cv-4192, 2013 WL 6700017, at *2 (N.D. Cal. Dec. 19, 2013) (citation and internal quotation marks omitted). *Berkeley Unified Sch. Dist. of Alameda Cty. v. James I Barnes Const. Co.,* 112 F. Supp. 396 (N.D. Cal. 1953) (In an action by a school district against a contractor for breach of contract to build school buildings, the contractor's contention that the school district was limited to recovery on contractor's bid bond pursuant to provision in advertisement for bids could not be properly decided on motion to dismiss, but was an issue to be pleaded by way of answer or defense.). *Kuang Xuan Liu v. Win Woo Trading, LLC*, No. 14-CV-02639-KAW, 2014 WL 7140514, at *3 (N.D. Cal. Dec. 12, 2014) (The court declined to strike the sixth affirmative defense of unjust enrichment; defendants pleading that the hourly salary in 2010 was $11.25, rather than the $12.50, was sufficient to put Plaintiffs on notice.).

North Coast provided factual support for its affirmative defense alleging The Monk Estate contractually consented to engage with North Coast in the acts complained-of in the FAC. ECF No. 10. Specifically, the sale of BEER GEAR falls within the scope of the agreed "marketing

---

[8] In that case the court struck all affirmative defenses and granted defendant leave to amend. *J & J Sports Productions, Inc. v. Mendoza-Govan*, Case No. 10-cv-05123 (N.D. Cal. 2011).

and distributing" of the Brother Thelonious ale, which The Monk Estate plead was the scope of consent. *See* ECF No. 10 at ¶ 37.

### 2. North Coast's Fourteenth Affirmative Defense

With respect to North Coast's fourteenth affirmative defense (no injury), The Monk Estate acknowledges that North Coast alleged facts in connection with this defense. ECF No. 68 at p. 5. However, the Monk Estate argues that this affirmative defense does not plead extraneous matter and only states no injury. *Id*. This defense is clearly not "immaterial, impertinent, or scandalous," Fed. R. Civ. P. 12(f), and its presence in the Answer does not prejudice The Monk Estate in any way.

Here, The Monk Estate suffered no actual injury, and that fact has been confirmed by The Monk Estate's Rule 30(b)(6) designee on the subject of damage and injury to The Monk Estate. (*See* Zelnick Declaration, Ex. 5.)

### 3. North Coast's Fifteenth and Twentieth Affirmative Defenses

With respect to North Coast's fifteenth affirmative defense (failure to act in a commercially reasonable manner) and twentieth affirmative defense (no mistake, fraud, coercion, or request), The Monk Estate acknowledges that North Coast alleged facts in connection with these defenses. ECF No. 68 at pp. 5-6. The Monk Estate asserts that these affirmative defenses are improper because they are based on damages and do not give the Monk Estate fair notice. *Id.*

The Monk Estate's first argument – that Defendant's affirmative defenses are improper because they are based on damages – fails because it is expressly precluded by the Ninth Circuit's opinion in *Whittlestone, Inc. v. Handi-Craft Co*., 618 F.3d 970, 974 (9th Cir. 2010). In *Whittlestone*, the Ninth Circuit held that Rule 12(f) does not authorize a district court to strike an affirmative defense of no injury, on the ground that such damages are precluded as a matter of law. *Id*.

The Monk Estate's second argument equally fails. *See MIC Prop. and Cas. Corp. v. Kennolyn Camps, Inc*., No. 5:15-CV-00589-EJD, 2015 WL 4624119, at *2 (N.D. Cal. Aug. 3, 2015) ("In this district at least, a defendant provides 'fair notice' of an affirmative defense by meeting the pleading standard articulated in Federal Rule of Civil Procedure 8, as further refined

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
MENLO PARK

by" *Twombly* and *Iqbal*.). Fair notice generally requires that the defendant identify the nature and grounds for the affirmative defense, rather than plead a detailed statement of the facts upon which the defense is based. *Dodson v. Munirs Co*., No. CIV. S-13-0399 LKK, 2013 WL 3146818, at *2 (E.D. Cal. June 18, 2013) *citing Kohler v. Islands Rests*., LP, 280 F.R.D. 560, 564 (S.D.Cal.2012) (*citing Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

The Monk Estate has not plead in its Unjust Enrichment count that any benefit conferred on North Coast was due to mistake, fraud, coercion or request, and so North Coast has merely plead the absence of those elements of such a claim.

### 4. North Coast's Sixteenth Affirmative Defense

The Monk Estate asserts that North Coast's Sixteenth affirmative defense (statute of limitations) is improper because North Coast does not allege precisely *how* The Monk Estate's claims are outside the applicable statute of limitations.

Under California law, a defendant pleading a statute of limitations defense may do so in one of two ways: (1) citing the applicable statutory section, and if the statutory section has subdivisions, the subdivision pursuant to which the defense is raised; or (2) pleading the facts showing that the action is barred. *Schaeffer v. Gregory Vill. Partners, L.P*., 105 F. Supp. 3d 951, 962 (N.D. Cal. 2015) *citing Mysel v. Gross*, 70 Cal.App.3d Supp. 10, 15, 138 Cal. Rptr. 873 (1977) (citations omitted); s*ee also, Smith v. Wal-Mart Stores*, No. C 06-2069 SBA, 2006 WL 2711468, at *12 (N.D. Cal. Sept. 20, 2006) *citing Wyshak v. City Nat'l Bank*, 607 F.2d at 827 (9th Cir.1979) (statute of limitations defense was adequately pled – putting the plaintiff on "fair notice" of the defense – when an answer "simply alleged that 'plaintiff's claims are barred by the applicable statute of limitations . . . .").

The Lanham Act has no express limitations period. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc*., 304 F.3d 829, 836 (9th Cir. 2002). When Congress provides no limitations period for federally-created rights, it "borrows" the most closely-analogous limitations period from state law. *Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946). The U.S. Supreme Court explained in 1946:

> If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive. The rub comes when Congress is silent. Apart from penal enactments, Congress has usually left the limitation of time for commencing actions under national legislation to judicial implications. As to actions at law, the silence of Congress has been interpreted to mean that it is federal policy to adopt the local law of limitation. The implied absorption of State statutes of limitation within the interstices of the federal enactments is a phase of fashioning remedial details where Congress has not spoken but left matters for judicial determination within the general framework of familiar legal principles.

*Id*.

Thus, California federal courts apply California's general statutory limitations period of three years, as set forth in California's Code of Civil Procedure § 338 to claims for trademark infringement and for false description/false endorsement. *See Karl Storz Endoscopy-America, Inc. v. Surgical Technologies, Inc*., 285 F.3d 848, 857 (9th Cir. 2002). With respect to unjust enrichment, "[a]n unjust enrichment or quasi-contract action in the form of a common count to recover money or other benefit obtained by mistake is governed by the three-year statute of limitations for actions based on fraud or mistake (i.e., [Cal. Code Civ. Proc.] § 338, subd. (d))." *Federal Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th 333, 348 (2008).

With respect to right of publicity claims, the statute of limitations is two years. *See Cusano v. Klein,* 264 F.3d 936, 950 (9th Cir. 2001).

### 5. North Coast's Twenty-Fifth, Twenty-Sixth, and Twenty-Seventh Affirmative Defenses

North Coast's Twenty-Fifth affirmative defense (failure to mitigate damages), Twenty-Sixth affirmative defense (punitive damages not available), and Twenty-Seventh affirmative defense (no double recovery) are cognizable affirmative defenses to limit or preclude the Monk Estate's claims. The Monk Estate incorrectly asserts these are improper defenses merely because they are based on damages.

Failure to mitigate damages is a proper affirmative defense in this District: "Although the failure to mitigate doctrine operates to reduce damages rather than as a barrier to liability," it is still considered an affirmative defense. *Murphy v. Trader Joe's*, No. 16-CV-02222-SI, 2017 WL 235193, at *3 (N.D. Cal. Jan. 19, 2017) *citing  ALLTEL Info. Servs., Inc. v. F.D.I.C.*, 194 F.3d

1036, 1044 (9th Cir. 1999) (considering the "Affirmative Defense of Failure to Mitigate"); *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, No. 15-1893, 2016 WL 3017552, at *3 (N.D. Cal. May 26, 2016) (considering "the tenth affirmative defense, failure to mitigate damages"). Indeed, most federal courts hold that failure to mitigate damages is an affirmative defense that must be plead or be deemed waived.[9]

Additionally, this district has recognized the unavailability of punitive damages is a cognizable affirmative defense. *Jansen v. Travelers Commercial Ins. Co*., No. 16-CV-04834-JST, 2017 WL 607610, at *3 (N.D. Cal. Feb. 15, 2017) (*citing Weddle v. Bayer AG Corp*., No. 11CV817 JLS, 2012 WL 1019824, at *5 (S.D. Cal. Mar. 26, 2012)) ("There does not appear to be any such limitation on affirmative defenses in the Ninth Circuit). *See Smith v. Wal-Mart Stores, et al.*, 2006 WL 2711468 at *6 (finding that the Ninth Circuit has held that "defendant may, in the context of a Title VII case, 'establish an affirmative defense to punitive damages liability when they have a bona fide policy against discrimination[,]'" and holding that "Defendant may advance affirmative defenses regarding potential relief.") (*quoting Passantino v. Johnson & Johnson Consumer Prods*., 212 F.3d 493, 516 (9th Cir. 2000)). *Id.*

The Ninth Circuit has also recognized "no double recovery" as a valid affirmative defense: "Since restitution was awarded based on [plaintiff's] evidence of economic damages, any civil damages awarded to her in the future would likely be subject to affirmative defenses, such as setoff for any restitution already paid since double recovery is not favored in California." *In re Duque*, No. BAP CC-05-1069-MAMC, 2005 WL 6960181, at *5 (B.A.P. 9th Cir. Dec. 30, 2005) *citing Anheuser–Busch, Inc. v. Starley,* 28 Cal.2d 347, 350, 170 P.2d 448, 451 (1946). *See*

---

[9] Most federal courts regard the failure to mitigate as an affirmative defense under Rule 8(c)'s catchall clause which provides for "any other matter constituting an avoidance or affirmative defense." *See Conjugal Partnership v. Conjugal Partnership,* 22 F.3d 391, 400 (1st Cir. 1994) ("Failure to mitigate is an affirmative defense as a matter of federal procedural law . . . ."); *Lennon v. United States Theatre Corp.,* 920 F.2d 996, 1000 (D.C. Cir. 1990) ("[F]ailure to mitigate damages is an affirmative defense under Rule 8(c)."); *Sayre v. Musicland Group, Inc.,* 850 F.2d 350, 354 (8th Cir.1988) (same); *NLRB v. Pilot Freight Carriers, Inc*., 604 F.2d 375, 376 (5th Cir. 1979) (same).

*also, Convoy Corp. v. Sperry Rand Corp.*, 601 F.2d 385, 390 (9th Cir. 1979) ("Double recovery as a defense is an affirmative defense.").

### C. IF THE COURT WERE INCLINED TO STRIKE ANY PART OF DEFENDANT'S PLEADINGS, NORTH COAST SHOULD BE GRANTED LEAVE TO AMEND

If the Court strikes any of North Coast's affirmative defenses, "leave to amend should be freely given," so long as no prejudice would result. *Wyshak*, 607 F.2d at 826, *quoting* Fed.R.Civ.P. 15(a) (and *citing Foman v. Davis*, 371 U.S. 178, 182 (1962)) (additional citation omitted). *See also, Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) ("extreme liberality" applies in this situation); *Hip Hop Bev. Corp. v. Ric Representacoes Importacao e Comercio Ltda.*, 220 F.R.D. 614, 620 (C.D. Cal. 2003) (the same liberal policy applies to amending counterclaims under Rule 13(f)); *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (if a court dismisses a complaint, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts.").

Here, any pleading deficiency the Court were, *arguendo*, to identify could easily be corrected by North Coast. The Monk Estate has not alleged any prejudice from amendment. To the contrary, the development of the factual record in this case (as explained *supra*) would make it unjust to strike or refuse leave to amend any of North Coast's affirmative defenses.

### IV. CONCLUSION

For the foregoing reasons, Defendant respectfully requests Plaintiff's Motion to Strike be denied.

**MCDERMOTT WILL & EMERY LLP**

DATED: April 11, 2018      By: */s/ Robert W. Zelnick*
                                Robert W. Zelnick

Attorneys for *North Coast Brewing Co., Inc.*